**F I L E D**
CLERK, U.S. DISTRICT COURT

7/11/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:23-cr-00337-TJH |
| Plaintiff, | <u>I N D I C T M E N T</u> |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2326(2): Telemarketing and Email Marketing Fraud Targeting the Elderly; 18 U.S.C. §§ 981(a)(1)(C), 2328, 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| MICHAEL ALEXAI DRAGUNOV, aka "Michael Anthony Farole," aka "Michael Le Fleur," aka "Michael LeFleur," aka "Michael LeFleur Dragunov," aka "Gene Andrews," aka "James Logan," aka "Jonathan Martin," aka "Jason Ramone," aka "Vic Romano," aka "Victor Romano," aka "Jonathan Williams," and CHRISTOPHER MICHAEL LANG, aka "Scott Graham," aka "David Hyatt," aka "Don Lewis," aka "Jack Morgan," aka "Anthony Parker," aka "Kevin Parker," aka "Mark Parker," | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant MICHAEL ALEXAI DRAGUNOV, also known as ("aka") "Michael Anthony Farole," aka "Michael Le Fleur," aka "Michael LeFleur," aka "Michael LeFleur Dragunov," aka "Gene Andrews," aka "James Logan," aka "Jonathan Martin," aka "Jason Ramone," aka "Vic Romano," aka "Victor Romano," aka "Jonathan Williams," resided in and conducted business from the Central District of California.

2.   Defendant CHRISTOPHER MICHAEL LANG, aka "Scott Graham," aka "David Hyatt," aka "Don Lewis," aka "Jack Morgan," aka "Anthony Parker," aka "Kevin Parker," aka "Mark Parker," resided in and conducted business from Florida from 2013 to 2016 and from Kansas from 2016 to 2023.

3.   Defendant DRAGUNOV controlled and worked for Premier Marketing, LLC ("Premier Marketing"), a telemarketing company that operated in the Central District of California and elsewhere from at least in or around August 2013.  Defendant LANG also worked at Premier Marketing.

4.   Defendant LANG incorporated and controlled CML Marketing Specialists, Inc. ("CML Marketing"), a telemarketing company that was incorporated in Florida in or around October 2013.  Defendant DRAGUNOV also represented CML Marketing.

5.   Defendant LANG represented Condo Rental Associates, LLC ("Condo Rental Associates"), a telemarketing company that operated in Tennessee and elsewhere from at least in or around June 2014.

6.   Defendant DRAGUNOV controlled and worked for Paramount Media, LLC, aka "Paramount media LLC" ("Paramount Media"), a telemarketing company that operated in the Central District of

2

1   California and elsewhere from at least in or around March 2018.

2   Defendant LANG also worked at Paramount Media.  Premier Marketing,

3   CML Marketing, Condo Rental Associates, and Paramount Media are

4   collectively referred to as the "Telemarketing Companies."

5       7.   Bank of America N.A. ("BOA"), Golden Plains Credit Union

6   ("GPCU"), First Republic Bank Co. ("FRB"), JPMorgan Chase & Co.

7   ("Chase"), U.S. Bancorp Bank ("USB"), and Wells Fargo & Company

8   ("WFB"), were federally insured financial institutions.

9       8.   Defendant DRAGUNOV controlled, and was the sole signatory

10  for, the following bank accounts, among others:

11          a.   An FRB account ending in 3897, held in the name of

12  Premier Marketing, in Studio City, California ("FRB Account 3897");

13          b.   A USB account ending in 3147, held in the name of

14  Premier Marketing, in Los Angeles, California ("USB Account 3147");

15          c.   A Chase account ending in 0683, held in the name of

16  Paramount Media, in Studio City, California ("Chase Account 0683");

17          d.   A BOA account ending in 7022, held in the name of

18  Paramount Media, in Los Angeles, California ("BOA Account 7022"); and

19          e.   A BOA account ending in 7035, held in the name of

20  Paramount Media, in Los Angeles, California ("BOA Account 7035").

21      9.   Defendant LANG controlled, and was the sole signatory for,

22  the following bank accounts, among others:

23          a.   A WFB account ending in 0565, held in the name of CML

24  Marketing, in Florida ("WFB Account 0565");

25          b.   A Chase account ending in 8667, held in defendant

26  LANG's name, in Florida ("Chase Account 8667"); and

27          c.   A GPCU account ending in 4001, held in defendant

28  LANG's name, in Kansas ("GPCU Account 4001").

10.   Skype Technologies ("Skype"), a division of Microsoft Corp., provided a Voice over Internet Protocol ("VoIP") platform that allowed users to create accounts and use them to place voice calls, including to cell phones and landlines, which defendants DRAGUNOV and LANG used to conduct voice calls with the victims.

11.   DocuSign, Inc. ("DocuSign") and Glykka LLC d/b/a Signeasy ("Signeasy") were electronic signature technology companies whose platforms the Telemarketing Companies used to digitally transfer contracts and other documents to victims to solicit the victims' electronic signatures.

12.   Stripe, Inc. ("Stripe") was an electronic payment processing technology company whose payment platform the Telemarketing Companies used to process payments from victims to the Telemarketing Companies' bank accounts.  Defendant DRAGUNOV controlled two Stripe accounts with account ending in -tTAz and -xKkc.

13.   These Introductory Allegations are incorporated into each Count of this Indictment.

COUNT ONE

[18 U.S.C. §§ 1349, 2326(2)]

[ALL DEFENDANTS]

A.   OBJECT OF THE CONSPIRACY

14.   Beginning no later than on or about August 28, 2013, and continuing through on or about June 28, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHAEL ALEXAI DRAGUNOV, also known as ("aka") "Michael Anthony Farole," aka "Michael Le Fleur," aka "Michael LeFleur," aka "Michael LeFleur Dragunov," aka "Gene Andrews," aka "James Logan," aka "Jonathan Martin," aka "Jason Ramone," aka "Vic Romano," aka "Victor Romano," aka "Jonathan Williams," and CHRISTOPHER MICHAEL LANG, aka "Scott Graham," aka "David Hyatt," aka "Don Lewis," aka "Jack Morgan," aka "Anthony Parker," aka "Kevin Parker," aka "Mark Parker," knowingly conspired with each other and others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with the conduct of telemarketing and email marketing, as defined in Title 18, United States Code, Section 2325, and, in so doing, targeted persons over the age of 55 and victimized ten or more persons over the age of 55.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

15.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.   Defendants DRAGUNOV and LANG and other co-conspirators would register and assist in registering the Telemarketing Companies with the Secretaries of States in California, Florida, and Tennessee.

b.   Defendants DRAGUNOV and LANG and other co-conspirators would contact potential victims, many of whom were elderly, who were

5

1  current or former timeshare owners and offer to help them sell and/or

2  rent their timeshare properties for fees paid in advance.

3     c. To conceal the fraudulent scheme and the co-

4  conspirators' true identities, defendants DRAGUNOV and LANG would

5  call and message the potential victims from Skype VoIP phone numbers

6  and use aliases instead of their true names.

7     d. Defendant DRAGUNOV and other co-conspirators would

8  convince victims to enter into agreements with the Telemarketing

9  Companies, which were formalized in documents that were faxed or sent

10  electronically through Docusign or Signeasy, by falsely representing

11  that the Telemarketing Companies would assist the victims with

12  selling and/or renting their timeshare properties for a "one time"

13  advertising fee.

14     e. Defendants DRAGUNOV and LANG and other co-conspirators

15  would continue to contact victims and knowingly make false and

16  fraudulent statements, representations, and promises for the purpose

17  of inducing the victims to send more money to the Telemarketing

18  Companies, including that:

19      i. the victims still owned timeshare properties that

20  the victims had in fact already sold or disposed of;

21      ii. the victims owed taxes related to their timeshare

22  properties;

23      iii. the Telemarketing Companies had buyers and/or

24  renters lined up for the victims' timeshare properties;

25      iv. if the victims paid the specific amounts of money

26  that the callers demanded, that money would be used to pay for

27  services related to facilitating the sale and/or rental of the

28  victims' timeshare properties, taxes associated with their timeshare

properties, "title fees," "quitclaim deed fees," "holding fees," or fees to purportedly expedite the delivery of proceeds from the sale or rental of the victims' timeshare properties;

v.   the fees being requested from the victims would be refunded or reimbursed to the victims once a sale and/or rental of the victims' timeshares was finalized;

vi.   if the victims paid the specific amounts of money that the callers demanded, the Telemarketing Companies guaranteed that the Telemarketing Companies would continue to advertise the victims' timeshares until the properties were sold or rented; and

vii. if the victims tried to dispute their payments to the Telemarketing Companies, the victims would automatically lose their disputes and lose all funds paid and any proceeds from a sale or rental of their timeshares.

f.   In fact, as defendants DRAGUNOV and LANG then knew:

i.   the co-conspirators had no intention of selling and/or renting the victims' timeshare properties;

ii.   the Telemarketing Companies had not recovered any money from the victims' prior sales of their timeshare properties;

iii. the victims did not owe the amount of taxes on their timeshare properties that the co-conspirators claimed was owed;

iv.   the Telemarketing Companies would not use the money paid by victims to advertise or market the victims' timeshare properties for sale or rental, or to pay "fees" purportedly needed to sell and/or rent the victims' timeshare properties;

v.   the Telemarketing Companies would not refund or reimburse the victims for fees that they had already paid; and

vi.   the Telemarketing Companies had not secured the sale or rental of the victims' timeshare properties, or the ensuing proceeds.

g.   Defendants DRAGUNOV and LANG and other co-conspirators would omit and conceal material facts from the victims, including the fact that none of the payments sought by the Telemarketing Companies were used for the purpose of facilitating the sale or rental of the victims' timeshare properties or to pay for fees and services associated with the sale or rental of the victims' timeshare properties, but were rather used for the purpose of personally enriching defendants DRAGUNOV and LANG.

h.   To discourage victims from filing disputes with the Telemarketing Companies, defendant DRAGUNOV caused agreements and invoices to be electronically transmitted to victims though Signeasy and Stripe, which required the victims to agree to waive their right to dispute their payments to the Telemarketing Companies, stated that victims would "automatically" lose any dispute that was filed, and/or stated that the victims would lose the fees and services already paid for in the event of a dispute or be required to pay additional fees.

i.   To create the false appearance that the Telemarketing Companies' payment processing accounts were being used to process legitimate transactions and to otherwise conceal the ongoing fraud, defendants DRAGUNOV and LANG and other co-conspirators, pretending to be customers of the Telemarketing Companies, engaged in hundreds of phony de minimis transactions with the Telemarketing Companies' payment processing accounts.

j.   Defendants DRAGUNOV and LANG and other co-conspirators would create and/or operate new telemarketing companies and financial

8

accounts after victims lodged complaints with financial institutions and consumer protection agencies about being defrauded by the existing telemarketing companies.

16.  Through this conspiracy, defendants DRAGUNOV and LANG and other co-conspirators fraudulently obtained more than $4.5 million from victims.

C.   OVERT ACTS

17.  In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants DRAGUNOV and LANG, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1.  **Creation and Operation of Telemarketing Companies**

Overt Act No. 1:   On August 28, 2013, defendant DRAGUNOV caused articles of incorporation for Premier Marketing to be filed with the California Secretary of State.

Overt Act No. 2:   On October 21, 2013, defendant LANG caused articles of incorporation for CML Marketing to be filed with the Florida Secretary of State.

Overt Act No. 3:   On August 6, 2015, an application was filed to rent mailbox no. 1448 at 3940 Laurel Canyon Boulevard, in Studio City, California (the "Laurel Canyon Mailbox") to receive mail for Paramount Media, Premier Marketing, and defendant DRAGUNOV.

Overt Act No. 4:   On March 1, 2018, defendant DRAGUNOV caused articles of incorporation for Paramount Media to be filed with the California Secretary of State.

Overt Act No. 5:   On March 12, 2018, defendant DRAGUNOV filed a commercial check cashing application for Premier Marketing at

Sherman Oaks – Los Angeles Check Cashing, located at 15030 Ventura Boulevard, in Sherman Oaks, California (the "Sherman Oaks Check Cashing Business").

Overt Act No. 6:   On July 19, 2018, defendant DRAGUNOV filed a commercial check cashing application for Paramount Media at the Sherman Oaks Check Cashing Business.

Overt Act No. 7:   On September 14, 2018, defendant DRAGUNOV signed an agreement to rent mailbox no. 306 at 15030 Ventura Boulevard, in Sherman Oaks, California (the "Ventura Boulevard Mailbox") to receive mail for Paramount Media and Premier Marketing.

Overt Act No. 8:   On August 3, 2022, defendant DRAGUNOV caused articles of incorporation for Paramount Media to be filed with the California Secretary of State.

**2.   Victim E.P.**

Overt Act No. 9:   In or around June 2014, defendant DRAGUNOV using the alias "James Logan," called victim E.P. and falsely said that victim E.P. still owned a timeshare property and stated that defendant DRAGUNOV would facilitate the sale of the property in exchange for a fee.

Overt Act No. 10:   On or before April 24, 2015, defendant DRAGUNOV caused a "Premier Marketing Advertising Disclosure Document" to be faxed to victim E.P., which required victim E.P. to pay a one-time "advertising fee" of $3,850 in exchange for Premier Marketing making victim E.P.'s "resort property information available to qualified buyers, renters, and licensed real estate brokers via Premier Marketing's advertising."

<u>Overt Act No. 11:</u>   On April 24, 2015, defendant DRAGUNOV caused a check from victim E.P. in the amount of $3,850 to be deposited into defendant DRAGUNOV's USB Account 3147.

<u>Overt Act No. 12:</u>   On November 15, 2016, defendant LANG or another co-conspirator caused a "Condo Rental Associates Membership Agreement" to be sent via DocuSign to victim E.P., which indicated that in exchange for a "membership fee" of $4,800, Condo Rental Associates agreed to place victim E.P.'s timeshare "into [its] inventory" and "contact [its] corporate contacts including, but not limited to, event planners, travel agents, vacation clubs, and private individuals."  The agreement further stated that "Condo Rental Associates has a 100% guarantee that you will be contacted for a rental/potential rental."

<u>Overt Act No. 13:</u>   On September 12, 2017, defendant LANG called victim E.P. and falsely stated that he had a buyer for victim E.P.'s timeshare but victim E.P. first needed to send $4,275 to make sure the buyer did not back out of the deal.

<u>Overt Act No. 14:</u>   On February 22, 2018, in a telephone call, defendant DRAGUNOV told victim E.P. to write a letter to First Republic Bank stating that "each and every transaction with Premier Marketing was legitimate" and that victim E.P. "opted to provide payment for marketing."

**3.   Victim J.N.**

<u>Overt Act No. 15:</u>   On or before April 4, 2015, defendant DRAGUNOV caused a "Premier Marketing Advertising Disclosure Document" to be faxed to victim J.N., which required victim J.N. to pay a $3,850 "advertising fee" in exchange for Premier Marketing making victim J.N.'s "resort property information available to qualified

11

1  buyers, renters, and licensed real estate brokers via Premier

2  Marketing's advertising."

3      <u>Overt Act No. 16</u>:   On April 28, 2016, during a phone call,

4  defendant LANG falsely promised victim J.N. that he would send victim

5  J.N. two certified checks for the sale of two timeshare units and

6  other recovered payments if victim J.N. sent a check payable to

7  Premier Marketing in the amount of $3,000 to the Laurel Canyon

8  Mailbox.

9      <u>Overt Act No. 17</u>:   On May 3, 2016, defendant DRAGUNOV caused a

10  check from victim J.N. payable to Premier Marketing in the amount of

11  $3,000 to be deposited into USB Account 3147.

12      <u>Overt Act No. 18</u>:   On June 5, 2017, during a telephone call,

13  defendant DRAGUNOV falsely represented to victim J.N. that defendant

14  DRAGUNOV had already recovered $23,837 from "Fraud Solutions" for

15  victim J.N. in connection with her timeshare and that he would send

16  such proceeds to victim J.N. and "go after" Fraud Solutions for

17  additional recovery once victim J.N. sent a "retainer fee" of $6,445

18  to Premier Marketing.

19      <u>Overt Act No. 19</u>:   On June 13, 2017, defendant DRAGUNOV caused

20  a check from victim J.N. payable to Premier Marketing in the amount

21  of $6,445 to be deposited into FRB Account 3897.

22      <u>Overt Act No. 20</u>:   On January 10, 2018, during a telephone

23  call, defendant DRAGUNOV falsely represented to victim J.N. that

24  "First National Title Co." needed $8,500 to expedite closing papers

25  for the sale of victim J.N.'s timeshare.

26      **4.   Victim R.C.**

27      <u>Overt Act No. 21</u>:   In or around early 2016, during a telephone

28  call, defendant LANG used the alias "Kevin Parker" and falsely

represented to victim R.C. that defendant LANG could help victim R.C. sell her timeshare in exchange for advertising fees.

Overt Act No. 22:   On September 14, 2016, defendant DRAGUNOV caused a check from victim R.C. payable to Premier Marketing in the amount of $8,000.00 to be deposited into USB Account 3147.

Overt Act No. 23:   On September 15, 2016, defendant DRAGUNOV caused $8,000.00 in cash to be withdrawn from USB Account 3147.

Overt Act No. 24:   On September 21, 2016, defendant DRAGUNOV caused a cashier's check in the amount of $3,993.00 to be purchased from a bank in Studio City that was addressed to defendant LANG with a memo line refencing victim R.C.'s name.

Overt Act No. 25:   On September 21, 2016, defendant LANG caused the cashier's check referenced in Overt Act No. 24 to be deposited into Chase Account 8667.

Overt Act No. 26:   On April 12, 2017, a co-conspirator caused a contract titled "CRA Rental-4-12-17.pdf" to be sent via DocuSign to victim R.C. for electronic signing.

Overt Act No. 27:   On August 29, 2019, during a telephone call, defendant LANG falsely represented to victim R.C. that her timeshare had sold and defendant LANG would be mailing her a check for $174,335 in a few days.

Overt Act No. 28:   On July 19, 2020, defendant DRAGUNOV placed a Skype voice call to victim R.C.

Overt Act No. 29:   On July 22, 2020, defendant LANG placed a Skype voice call to victim R.C.

**5.   Victim J.H.**

Overt Act No. 30:   In or before March 2016, in a telephone call, defendant LANG falsely represented to victim J.H. that

13

defendant LANG could help sell victim J.H.'s timeshare for a huge profit in exchange for advertising fees.

Overt Act No. 31:   On April 10, 2017, a co-conspirator employed at Condo Rental Associates caused a "CRA Rental-Membership Agreement 4-10-17.pdf" to be sent via DocuSign to victim J.H. for electronic signing.

Overt Act No. 32:   On May 25, 2017, defendant LANG caused a check from Premier Marketing payable to defendant LANG in the amount of $3,216.50 to be deposited into Chase Account 8667.  The check memo stated "payout" and victim J.H.'s full name.

Overt Act No. 33:   On December 22, 2017, defendant DRAGUNOV caused a check for $5,795 from victim J.H. payable to Premier Marketing to be deposited into FRB Account 3897, which victim J.H. had been told would be used to pay for attorney's costs and "title work" related to the sale of her timeshare.

Overt Act No. 34:   On June 15, 2018, defendant DRAGUNOV cashed a check from victim J.H. payable to Premier Marketing in the amount of $4,236.00 at the Sherman Oaks Check Cashing Business, which victim J.H. had been told would be used to pay "closing costs" related to the sale of her timeshare.

Overt Act No. 35:   On August 3, 2020, defendant LANG placed a Skype voice call to victim J.H.

**6.   Victims C.W. and A.C.**

Overt Act No. 36:   In or around early 2018, in a telephone call, defendant DRAGUNOV used the alias "James" and falsely represented to victim C.W. that defendant DRAGUNOV could sell victim C.W.'s timeshare property in exchange for fees to cover the costs of selling victim C.W.'s timeshare.

14

<u>Overt Act No. 37:</u>   On March 3, 2019, defendant DRAGUNOV cashed a check from victims C.W. and A.C. payable to Paramount Media in the amount of $4,837.24 at the Sherman Oaks Check Cashing Business, which victim C.W. had been told would be used to pay taxes related to her timeshare.

<u>Overt Act No. 38:</u>   On October 4, 2019, defendant DRAGUNOV placed a Skype voice call to victim C.W.

<u>Overt Act No. 39:</u>   On August 3, 2020, defendant LANG placed a Skype voice call to victim C.W.

**7.   Victim J.B.**

<u>Overt Act No. 40:</u>   On September 14, 2018, defendant DRAGUNOV cashed a check from victim J.B. payable to Premier Marketing in the amount of $4,990.00 at the Sherman Oaks Check Cashing Business, which a co-conspirator had told victim J.B. would be used to rent timeshare units on her behalf.

<u>Overt Act No. 41:</u>   On April 28, 2021, defendant LANG placed a Skype voice call to victim J.B.

<u>Overt Act No. 42:</u>   On April 28, 2021, defendant DRAGUNOV placed a Skype voice call to victim J.B.

<u>Overt Act No. 43:</u>   On April 28, 2021, defendant DRAGUNOV caused a "Paramount Media Renewal Agreement" to be transmitted to victim J.B. via Signeasy for electronic signing, which falsely stated, among other things, that the "renewal fee" that J.B. was paying would be used for "additional marketing" of J.B.'s timeshare "transaction" and that J.B. disputing the charge would "result in an immediate loss of that payment and service."

1        Overt Act No. 44:   On June 29, 2022, in text messages,

2    defendant LANG asked defendant DRAGUNOV to call victim J.B. because

3    victim J.B. "want[ed] to know dates and shit."

4        Overt Act No. 45:   On June 30, 2022, defendant DRAGUNOV placed

5    a Skype voice call to victim J.B.

6        Overt Act No. 46:   On May 1, 2023, defendant DRAGUNOV caused a

7    "Paramount Media Non-Dispute Form" to be transmitted to victim J.B.

8    via Signeasy for electronic signing, which falsely stated, among

9    other things, that "[e]very payment made to Paramount Media" would be

10   used to "help" with the "services" promised to victim J.B. and

11   required victim J.B. to agree to "automatically accept[] a loss" of

12   any dispute filed by victim J.B.

13       Overt Act No. 47:   On May 1, 2023, defendant DRAGUNOV caused

14   Stripe Invoice No. 9181AAFD-0048 requesting a payment of $8,350.00 to

15   be emailed to victim J.B., which payment victim J.B. made on May 1,

16   2023.

17       Overt Act No. 48:   On June 10, 2023, in text messages,

18   defendant LANG told defendant DRAGUNOV that he had gotten victim J.B.

19   to agree to pay $1,655 by telling her "there were additional taxes

20   owed since she [was] getting more money" and that defendant LANG

21   covered most of the taxes for victim J.B. but needed victim J.B. to

22   pay $1,655 to him.

23       Overt Act No. 49:   On June 10, 2023, in response to defendant

24   LANG's text message stating that defendant DRAGUNOV "might be able"

25   to sell victim J.B. on an additional upcharge, defendant DRAGUNOV

26   stated that he would "try the expedite fee" pitch or tell victim J.B.

27   that defendant LANG's card had been declined and victim J.B. now had

28   to pay the entire amount.

1   **8.  Victim M.F.T.**

2   Overt Act No. 50:  In or around November 2018, in a telephone

3   call, defendant DRAGUNOV used the alias "John Morgan" and falsely

4   represented to victim M.F.T. that he was an attorney from Wyndham

5   that could help victim M.F.T. sell her timeshare in exchange for

6   fees.  "John Morgan" directed victim M.F.T. to send a cashier's check

7   to Paramount Media and advised that victim M.F.T. would also be

8   getting a call from "Scott Lewis."

9   Overt Act No. 51:  On November 15, 2018, defendant DRAGUNOV

10  caused a cashier's check remitted by victim M.F.T. payable to

11  Paramount Media in the amount of $1,499.00 to be cashed at the

12  Sherman Oaks Check Cashing Business.

13  Overt Act No. 52:  In or around 2019, defendant DRAGUNOV called

14  victim M.F.T. using a different phone number and the alias "Gene

15  Andrews" and told victim M.F.T. that she had been scammed by "John

16  Morgan" and that defendant DRAGUNOV would help victim M.F.T. and sell

17  her timeshare in exchange for a fee.

18  Overt Act No. 53:  On August 26, 2019, defendant DRAGUNOV

19  caused Stripe Invoice No. 0D4EFAD1-0002 requesting a payment of

20  $3,450.00 to be emailed to victim M.F.T., which falsely represented,

21  among other things, that the $3,450.00 was a "non-refundable

22  membership fee" for Premier Marketing.

23  Overt Act No. 54:  In or around December 2022, defendant

24  DRAGUNOV caused Stripe Invoice No. 77BF5C8C-0002 requesting a payment

25  of $4,300.00 to victim M.F.T., which payment victim M.F.T. made on

26  December 7, 2022.

27

28

1    Overt Act No. 55:   On January 10, 2023, in text messages with

2  defendant DRAGUNOV, defendant LANG referenced the Stripe payment from

3  victim M.F.T. described in Overt Act No. 54.

4    **9.   Victim B.C.**

5    Overt Act No. 56:   In or around February 2019, defendant LANG

6  placed a Skype voice call to victim B.C. and, using the alias "Don

7  Lewis," defendant LANG offered to sell victim B.C.'s timeshare

8  property in exchange for fees.

9    Overt Act No. 57:   On November 9, 2020, defendant DRAGUNOV

10  caused Stripe Invoice No. E0283A0A-0003 requesting a "program fee" of

11  $3,575.00 to be emailed to victim B.C., which falsely "guarantee[d]"

12  that Paramount Media would "work on" victim B.C.'s timeshare

13  transaction "until it is complete" and required victim B.C. to waive

14  any disputes going forward.

15    Overt Act No. 58:   On April 5, 2021, defendant LANG placed a

16  Skype voice call to victim B.C.

17    Overt Act No. 59:   On April 5, 2021, approximately 15 minutes

18  after the voice call referenced in Overt Act No. 58 ended, defendant

19  DRAGUNOV placed a Skype voice call to victim B.C.

20    Overt Act No. 60:   On April 5, 2021, defendant DRAGUNOV caused

21  a "Paramount Media Contract" to be transmitted to victim B.C. via

22  Signeasy, which falsely stated, among other things, that Paramount

23  Media "guarantee[d]" Paramount Media would "work on the service with

24  you until it is completed" and that victim B.C. "waiv[ed] [her] right

25  to dispute this charge in any way, shape or form moving forward" and

26  advised that "[e]ven attempting a dispute will result in a loss of

27  the payment AND service immediately."

28

Overt Act No. 61:   On April 5, 2021, defendant DRAGUNOV caused a Stripe Invoice No. E0283A0A-0004 requesting a payment of $4,175 to be emailed to victim B.C., which payment victim B.C. made that day.

Overt Act No. 62:   On June 24, 2021, defendant LANG placed a Skype voice call to victim B.C.

Overt Act No. 63:   On June 24, 2021, defendant DRAGUNOV placed a Skype voice call to victim B.C.

Overt Act No. 64:   On June 24, 2021, defendant DRAGUNOV caused Stripe Invoice No. E0283A0A-0006 requesting a payment of $4,050 to be emailed to victim B.C., which falsely promised that Paramount Media would "work on" victim B.C.'s timeshare transaction "until it is completed" and required victim B.C. to waive any disputes going forward.

Overt Act No. 65:   On November 22, 2021, in text messages, defendant LANG asked defendant DRAGUNOV about defendant LANG's payouts related to various victims, including the payment by B.C. described in Overt Act No. 61.

**10.  Victim D.A.**

Overt Act No. 66:   In or around 2020, in a voice call, defendant LANG used the alias "Scott" and represented to victim D.A. that defendant LANG could help sell victim D.A.'s timeshare property in exchange for fees.

Overt Act No. 67:   On September 21, 2020, defendant LANG placed a Skype voice call to victim D.A.

Overt Act No. 68:   On November 10, 2020, in text messages, defendant LANG told defendant DRAGUNOV that victim D.A. had called defendant LANG complaining that victim D.A. had not received any credits back and was going to have defendant LANG "checked out."

Overt Act No. 69:   In or around April 2021, in a voice call, defendant DRAGUNOV used the alias "Victor" and told victim D.A. that the process of selling her timeshare "was on its last leg" and almost done and requested more money to speed up the process.

Overt Act No. 70:   On April 20, 2021, defendant DRAGUNOV placed a Skype voice call to victim D.A.

Overt Act No. 71:   On April 27, 2021, defendant DRAGUNOV sent a Skype message to victim D.A. directing her to send a cashier's check for the "same amount as last time," that is, $6,950, payable to Paramount Media to the Ventura Boulevard Mailbox.

Overt Act No. 72:   On May 3, 2021, defendant DRAGUNOV caused the cashier's check referenced in Overt Act No. 71 to be deposited into Chase Account 0683.

**11.  Victims L.W. and S.W.**

Overt Act No. 73:   In or around 2018, in a voice call, defendant LANG used the alias "Scott Graham" and offered to help victim L.W. sell or rent her timeshares in exchange for fees.

Overt Act No. 74:   In or around November 2021, in a voice call, defendant LANG falsely represented to victim L.W. that defendant LANG had found a potential renter for victim L.W.'s timeshare, who defendant LANG explained was "Victor" from Paramount Media.

Overt Act No. 75:   On November 10, 2021, defendant DRAGUNOV used the alias "Victor" and placed a Skype voice call to victim L.W.

Overt Act No. 76:   On September 22, 2022, in text messages, defendants LANG and DRAGUNOV discussed a potential "cash deal" with victim L.W.

Overt Act No. 77:   On September 23, 2022, in text messages, defendant LANG indicated that his deal with victim L.W. would likely

close the following morning, and defendants LANG and DRAGUNOV agreed that defendant DRAGUNOV would send the invoice for the deal the following morning.

Overt Act No. 78:   On September 24, 2022, defendant DRAGUNOV caused Stripe Invoice No. 6578893F-0018 requesting a payment of $3,450.00 to be emailed to victim L.W., which falsely stated that the $3,450.00 was a "program fee" that was "non-disputable" and "non-refundable."

Overt Act No. 79:   On April 28, 2023, defendant LANG sent defendant DRAGUNOV a text with the name and email address of victim L.W. and the amount "$3,000."

Overt Act No. 80:   On April 28, 2023, defendant DRAGUNOV caused Stripe Invoice No. 6578893F-0034 requesting a payment of $3,000 to be sent to victim L.W., which payment victim L.W. made on April 28, 2023.  The invoice falsely stated that by paying the invoice, victim L.W. "waiv[ed] any right to a refund the moment" the invoice was "processed."

Overt Act No. 81:   On May 3, 2023, defendant LANG falsely represented to victim L.W. during a call that a lien on her timeshare deed was holding up the sale and that if victim L.W. sent money to Paramount Media, that money would be used to pay off the lien.

Overt Act No. 82:   On May 5, 2023, defendant LANG sent a Skype message to victim L.W. stated that defendant DRAGUNOV would be emailing her an invoice.

Overt Act No. 83:   On May 5, 2023, defendant DRAGUNOV caused Stripe Invoice No. 6578893F-0037 requesting a payment of $9,595.00 to be emailed to victim L.W., which stated that L.W. was waiving "any right to a refund the moment" the invoice was "processed."

1    Overt Act No. 84:   On May 8, 2023, defendant LANG called victim

2    L.W. and falsely stated that victim L.W. would be receiving a

3    cashier's check for $145,000 through overnight mail, which he claimed

4    was the profit from the sale of victim L.W.'s timeshare and a

5    reimbursement for the fees that victim L.W. had previously paid to

6    Paramount Media.

7    Overt Act No. 85:   On May 10, 2023, in a voice call, defendant

8    DRAGUNOV used the alias "Victor" and falsely represented to victim

9    L.W. that the courts and the COVID-19 pandemic had held up the

10   $145,000 cashier's check and that defendant DRAGUNOV could expedite

11   the payment to victim L.W. if victim L.W. paid a fee of $6,500.

12   Overt Act No. 86:   On May 10, 2023, in a voice call, defendant

13   DRAGUNOV falsely represented to victim L.W. that paying the $6,500

14   fee would "guarantee" that victim L.W.'s $145,000 cashier's check

15   would go out "immediately" and that the fee was reimbursable.

16   Overt Act No. 87:   On May 11, 2023, in text messages,

17   defendants LANG and DRAGUNOV discussed whether they could get victim

18   L.W. to pay another fee and agreed that defendant LANG would call

19   victim L.W. first with defendant DRAGUNOV following up with another

20   call to victim L.W., if needed.

21   Overt Act No. 88:   On May 11, 2023, defendant LANG placed a

22   Skype voice call to victim L.W., during which defendant LANG falsely

23   stated that a timeshare cancellation company that victim L.W. had

24   purportedly worked with in the past had caused the hold on victim

25   L.W.'s $145,000 cashier's check.  Defendant LANG told victim L.W.

26   that she needed to pay him $8,200 to remove the hold.

27   Overt Act No. 89:   On May 22, 2023, in response to defendant

28   DRAGUNOV's text message asking defendant LANG to get victim L.W. "on

the phone today and get her to cancel any and all disputes today by any means necessary don't care what you have to promise her just get her to stop them all," defendant LANG responded that he had tried to call victim L.W. and sent her a text.

Overt Act No. 90:    On May 22, 2023, in response to defendant DRAGUNOV's text message stating "we do need to get this 9595 covered as soon as we can" and that victim L.W. still wasn't responding to him, defendant LANG responded, "Try emailing her."

Overt Act No. 91:    On May 22, 2023, defendant DRAGUNOV emailed victim L.W. asking her to call him "ASAP regarding the dispute" that victim L.W. had filed regarding her payments to Paramount Media.  The email stated, among other things, that victim L.W. should cancel her dispute and threatened to "provide all the documentation that [she] signed verifying that [she] knew it was non disputable" to victim L.W.'s credit card company, which would cause victim L.W. to "los[e] the transaction and the funds."  Defendant DRAGUNOV also claimed that "EVERY single time this has happened with a client we have won that dispute" and promised to "guarantee completion" of victim L.W.'s transaction if she withdrew her dispute.

Overt Act No. 92:    On June 13, 2023, in response to defendant LANG's text message asking if victim L.W. had called defendant DRAGUNOV, defendant DRAGUNOV responded, "No.  Best to leave her be for now.  I sent the info to that bank lady."

**12.  Victim R.S.**

Overt Act No. 93:    In or around September 2019, in a voice call, defendant LANG used the alias "Don Lewis" and falsely told victim R.S. that defendant LANG could rent out victim R.S.'s timeshare.

23

1    Overt Act No. 94:   On February 11, 2020, defendant LANG placed

2   a Skype voice call to victim R.S. and left a voicemail that defendant

3   LANG had "good news" about "the rental lease that you contracted with

4   us to rent for you."

5    Overt Act No. 95:   On February 21, 2020, defendant DRAGUNOV

6   caused Stripe Invoice 7726FE32-0001 requesting a payment of $3,145.00

7   to be emailed to victim R.S., which falsely stated that the $3,145.00

8   was for a "non-refundable nutr. program."

9    Overt Act No. 96:   On June 2, 2020, defendant DRAGUNOV placed a

10  Skype voice call to victim R.S. and left a voicemail that defendant

11  DRAGUNOV had spoken to defendant LANG and wanted "to go over a couple

12  things" with victim R.S. "so we can get everything done."

13    Overt Act No. 97:   On December 29, 2021, defendant DRAGUNOV

14  placed a Skype voice call to victim R.S. and left a voicemail that

15  "everything was going really good" and defendant DRAGUNOV should

16  "have an answer right after the 1st of the year" and that "everything

17  should be hopefully wrapped up by then."

18    Overt Act No. 98:   On September 21, 2022, defendant LANG texted

19  defendant DRAGUNOV that he was "closing [a] deal" and sent a

20  photograph of a handwritten note with victim R.S.'s name, address,

21  phone number, email address, credit card information next to the

22  amount "$4850," and the note, "Lifestyle Holiday Vac. Club 16 Rentals

23  $34,250."

24    Overt Act No. 99:   On September 21, 2022, defendant DRAGUNOV

25  caused Stripe Invoice 7726FE32-0022 requesting a "non-refundable,

26  non-disputable fee" of $4,850.00 to Paramount Media to be emailed to

27  victim R.S.

28

1     <u>Overt Act No. 100:</u>  On September 21, 2022, in text messages, in

2 response to defendant DRAGUNOV advising defendant LANG that the

3 payment from victim R.S.'s Stripe invoice had come in, defendant LANG

4 said, "Thank you now pay me," to which defendant DRAGUNOV replied,

5 "Zelle might be a delay."

6     <u>Overt Act No. 101:</u>  On September 23, 2022, in response to

7 defendant LANG's text message stating that his payout for the deal

8 with R.S. had not come through on Zelle yet, defendant DRAGUNOV sent

9 defendant LANG a screenshot showing that defendant DRAGUNOV had sent

10 $1,453.00 from BOA Account 7022 via Zelle to defendant LANG on

11 September 22, 2022.

12     <u>Overt Act No. 102:</u>  On February 8, 2023, defendant LANG placed a

13 Skype voice call to victim R.S. and left a voicemail asking victim

14 R.S. to call back "so we can figure out what's going on here and get

15 this done."

16     <u>Overt Act No. 103:</u>  On March 6, 2023, defendant LANG texted

17 defendant DRAGUNOV a photo depicting a handwritten note that

18 contained victim R.S.'s credit card information, the amount $6,995,

19 and "lifestyle 16 rental $30,200" as well the email address of victim

20 R.S.

21     <u>Overt Act No. 104:</u>  On March 6, 2023, defendant DRAGUNOV caused

22 a "Paramount Media Non-Dispute Form" to be transmitted to victim R.S.

23 via Signeasy in connection with a charge to victim R.S.'s card ending

24 in 2791, which falsely stated, among other things, that "every

25 payment made to Paramount Media is covering" expenses associated with

26 the "service" promised to victim R.S. and required victim R.S. to

27 agree to "automatically accept[] a loss of" any dispute.

28

Overt Act No. 105:  On March 6, 2023, defendant DRAGUNOV caused Stripe Invoice 7726FE32-0045 requesting a payment of $6,995 to be emailed to victim R.S.

Overt Act No. 106:  On March 6, 2023, after sending victim R.S. the documents referenced in Overt Acts Nos. 104 and 105, defendant DRAGUNOV texted defendant LANG that victim R.S. had completed the "invoice and docs."

Overt Act No. 107:  On April 25, 2023, defendant DRAGUNOV sent a Skype message to victim R.S. asking victim R.S. to "call me ASAP. Got the deal done."

Overt Act No. 108:  On April 27, 2023, defendant DRAGUNOV caused Stripe Invoice No. 7726FE32-0046 requesting a payment of $15,000 to Paramount Media to be emailed to victim R.S., which falsely stated that the $15,000 was a "non-refundable non-disputable fee."

Overt Act No. 109:  On May 5, 2023, defendant DRAGUNOV sent a Skype message to victim R.S. that falsely stated "it's all good news" for victim R.S.'s timeshare.

Overt Act No. 110:  On June 2, 2023, in text messages with defendant LANG, defendant DRAGUNOV stated that he had told victim R.S. that "Scott," referring to defendant LANG, needed to speak with him and sent a screenshot of defendant DRAGUNOV's Skype chat with victim R.S., in which defendant DRAGUNOV told victim R.S., "Please call Scott back.  His manager has been calling me this morning."

Overt Act No. 111:  On June 8, 2023, defendant LANG placed a Skype voice call to victim R.S., during which defendant LANG used the "Don Lewis" alias and told victim R.S. that victim R.S. needed to pay $4,105 toward a "security hold" fee that would eventually be refunded

before First Financial Bank cashier's checks for $160,040 and $39,035 could be mailed to victim R.S.

Overt Act No. 112:  On June 10, 2023, in response to defendant LANG's text asking if defendant DRAGUNOV "closed" a deal with victim R.S. after defendant LANG had "pitched him," defendant DRAGUNOV said he was going to call victim R.S. that day.

COUNTS TWO THROUGH TEN

[18 U.S.C. §§ 1343, 2326(2)]

[ALL DEFENDANTS]

A.   THE SCHEME TO DEFRAUD

18.  Beginning no later than August 28, 2013, and continuing until at least on or about June 28, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHAEL ALEXAI DRAGUNOV, also known as ("aka") "Michael Anthony Farole," aka "Michael Le Fleur," aka "Michael LeFleur," aka "Michael LeFleur Dragunov," aka "Gene Andrews," aka "James Logan," aka "Jonathan Martin," aka "Jason Ramone," aka "Vic Romano," aka "Victor Romano," aka "Jonathan Williams," and defendant CHRISTOPHER MICHAEL LANG, aka "Scott Graham," aka "David Hyatt," aka "Don Lewis," aka "Jack Morgan," aka "Anthony Parker," aka "Kevin Parker," aka "Mark Parker," together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money, funds, assets, and property owned by and in the custody and control of such victims by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, facts, in connection with the conduct of telemarketing and email marketing, as defined in Title 18, United States Code, Section 2325, and, in so doing, targeted persons over the age of 55 and victimized ten or more persons over the age of 55.

19.  The fraudulent scheme operated and was carried out, in substance, as described in Paragraphs 15 and 16 of this Indictment, which are incorporated here.

28

B.   USE OF THE WIRES

20.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendants DRAGUNOV and LANG, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | DEFENDANTS | WIRE |
|-------|------|------------|------|
| TWO | August 26, 2019 | DRAGUNOV, LANG | Interstate transmission of Stripe Invoice No. T0D4EFAD1-0002 requesting a fee of $3,450 from defendant DRAGUNOV to victim M.F.T. |
| THREE | February 21, 2020 | DRAGUNOV, LANG | Interstate transmission of Stripe Invoice No. 7726FE32-0001 from defendant DRAGUNOV to victim R.S. |
| FOUR | April 20, 2021 | DRAGUNOV, LANG | Interstate transmission of a Skype voice call from defendant DRAGUNOV to victim D.A. |
| FIVE | April 28, 2021 | DRAGUNOV, LANG | Interstate transmission of a "Paramount Media Renewal Agreement" via Signeasy from defendant DRAGUNOV to victim J.B. |
| SIX | June 24, 2021 | DRAGUNOV, LANG | Interstate transmission of a Skype voice call from defendant DRAGUNOV to victim B.C. |
| SEVEN | June 24, 2021 | DRAGUNOV, LANG | Interstate transmission of Stripe Invoice No. E0283A0A-0006 requesting a fee of $4,050 from defendant DRAGUNOV to victim B.C. |
| EIGHT | April 27, 2023 | DRAGUNOV, LANG | Interstate transmission of Stripe Invoice No. 7726FE32-0046 requesting a fee of $15,000 from defendant DRAGUNOV to victim R.S. |
| NINE | May 10, 2023 | DRAGUNOV, LANG | Interstate transmission of a Skype voice call from defendant DRAGUNOV to victim L.W. |
| TEN | May 22, 2023 | DRAGUNOV, LANG | Interstate transmission of an email from defendant DRAGUNOV to victim L.W. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 981(a)(1)(C), 2328 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 2328, as well as Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Ten of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Further notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 2328, in the event of any defendant's conviction of the enhancements set forth in 18 U.S.C. § 2326, as set forth in any of Counts One through Ten of this Indictment.  Any defendant so convicted shall forfeit to the United States of America the following:

(a)   any property, real or personal, constituting, or traceable to gross proceeds obtained from such offense; and

(b)   any equipment, software, or other technology used or intended to be used to commit or to facilitate the commission of such offense.

4.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//
//
//
//
//
//
//
//
//
//
//
//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL


                                        _____/S/_____
                                        Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

IAN V. YANNIELLO
Assistant United States Attorney
Deputy Chief, General Crimes Section

JULIA HU
Assistant United States Attorney
Major Frauds Section